UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIM ALEX, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>-against-<br><br>NFL ENTERPRISES LLC, and NATIONAL FOOTBALL LEAGUE,<br><br>*Defendants*. | 1:22-cv-09239 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Jim Alex, Mark Bowers, Boyce Brown, Steven Checchia, Norman Clark, Richard Funderburk, Adella Gonzalez, Christopher Horton, and Donavon Thompson ("Plaintiffs"), individually and on behalf of all others similarly situated, filed the instant class action against Defendants the National Football League ("NFL") and NFL Enterprises, LLC ("NFLE") (collectively, "Defendants"), alleging Defendants improperly and without consent shared their private information with Facebook. ECF No. 1, Compl. Plaintiffs bring a claim under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Pending before the Court is Defendants' motion to dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 25.

After reviewing the parties' submissions and all other relevant materials, the Court **DENIES** Defendants' motion to dismiss, ECF No. 25, pursuant to Fed R. Civ. P. 12(b)(1), and **GRANTS** Defendants' motion under Fed R. Civ. P. 12(b)(6). Plaintiffs are **DENIED** leave to amend their Complaint.

## BACKGROUND

I.     **Statement of Facts**[1]

Plaintiffs are subscribers to free e-newsletters of the NFL teams (the "Team Websites") operated by Defendants. ECF No. 1, Compl. ¶¶ 1-3. In exchange for their contact information, subscriber Plaintiffs received e-newsletter updates and content. *Id.* at ¶ 3, 13-21. Plaintiffs then accessed the Team Websites to view publicly available videos. *Id.* at ¶¶ 2-3, 8. In violation of the VPPA, Defendants shared Plaintiffs' personally identifiable information ("PII"), namely their Facebook ID ("FID"), tied to Plaintiffs' video watching data on the Team Websites (the "Video Watching Data") with Facebook without Plaintiffs' consent. *Id.* at ¶¶ 8-10. Facebook places cookies on the browsers of Facebook account holders, including a "c_user" cookie that contains a user's FID and can be used to identify that user. *Id.* at ¶¶ 47-48. Facebook was able to track Plaintiffs' activity due to Defendants' tracking methods: (1) Defendants utilized Facebook's Pixel and SDK code on the Team Websites, and (2) a Facebook cookie was stored on Plaintiffs' browsers. *Id.* at ¶¶ 140, 45. Facebook SDK is a flexible toolset that can be used to verify whether a user is logged into Facebook and collects and transmits video data and user information. *Id.* at ¶¶ 49-60. Facebook Pixel tracks user-activity on the web and when triggered, automatically shares data with Facebook. *Id.* at ¶¶ 62-74.

II.     **Procedural History**

On October 27, 2022, Plaintiffs filed a class action against Defendants pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all other similarly situated persons. Compl. Plaintiffs assert that as subscribers of the NFL e-newsletters, they are consumers under the VPPA. *Id.* at ¶ 163. They allege Defendants' violation of the VPPA harmed Plaintiffs,

---

[1] For the purposes of this motion, the facts are drawn from the Complaint and presumed to be true.

and seek monetary damages and injunctive relief "requiring Defendants to immediately (i) remove the Tracking Methods from the Team Websites or (ii) add, and obtain, the appropriate consent from subscribers." *Id.* at ¶ 11. Defendants moved to dismiss pursuant to Fed R. Civ. P. 12(b)(1) and 12(b)(6). ECF No. 25. The Court considers this motion fully briefed. For the reasons stated herein, Defendants' motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is hereby **GRANTED**.

## LEGAL STANDARD

### I. Federal Rules of Civil Procedure 12(b)(1)

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed R. Civ. P. 12(b)(1), "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). Where jurisdictional facts are at issue, "'the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id*. (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). But "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id*. (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### II. Federal Rules of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (2009) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### I. Plaintiffs Have Established Article III Standing.

To assert standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 112 (2d Cir. 2022) (same). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Intangible harms, such as reputational harms, can also be

4

concrete. *Id.* at 2197. The Court considers history, Congressional intent, and "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016).

In a recent similar decision, this Court found standing for a plaintiff alleging defendant corporations disclosed his video viewing history to Facebook.[2] *Martin v. Meredith Corp.*, 2023 U.S. Dist. LEXIS 27539, *5 (S.D.N.Y. Feb. 17, 2023). "[A]llegations that the defendants disclosed his private information to a third party without his consent are sufficient to confer standing." *Id.* (citing *TransUnion*, 141 S. Ct. at 2204). *See also Carter v. Scripps Networks, LLC*, No. 22-CV-2031, 2023 U.S. Dist. LEXIS 71150, *8 (S.D.N.Y. Apr. 24, 2023) ("[D]efendants' alleged disclosure of plaintiffs' personal information and viewing activities describes traditionally recognized harm."); *Salazar v. Nat'l Basketball Ass'n*, No. 1:22-CV-07935 (JLR), 2023 WL 5016968, at *4-7 (S.D.N.Y. Aug. 7, 2023) (collecting cases).

This Court adopts the reasoning in *Martin*, *Carter*, and *Salazar* and rejects Defendants' attack on Plaintiffs' standing. Plaintiffs have sufficiently alleged they were injured when Defendants shared their private information and video watching data with Facebook without consent.

## II. Plaintiffs Are Not Consumers Under the VPAA.

To bring a VPPA claim, a plaintiff must plausibly allege that: "(1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by another part of the statute." *Mollett v. Netflix, Inc.*, 795 F.3d

---

[2] Other jurisdictions have found violations of the right to privacy actionable under the VPPA. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–84 (9th Cir. 2017). *See also Feldman v. Star Tribune Media Co. LLC*, No. 22-CV-1731, 2023 WL 2388381, at *4 (D. Minn. Mar. 7, 2023) (claim that defendants shared plaintiff's video viewing data with Facebook was an intrusion upon seclusion was enough to survive a motion to dismiss).

1062, 1066 (9th Cir. 2015). A consumer is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The terms "goods or services" and "subscriber" are not defined, and must be given their plain dictionary meaning. The VPPA defines a "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

Courts have held that subscribers are consumers within the meaning of the VPPA.[3] Courts have examined the following non-dispositive factors to determine an individual's relationship with the provider: "sign[ing] up, register[ing] for an account, establish[ing] a user ID or profile, download[ing] an app or program, or tak[ing] any action to associate herself with [the provider]." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) (internal quotation marks omitted). A subscription is "an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit" such as "email updates." *Id.*

At the same time, Plaintiffs' viewing of public content on the provider's website is not enough to qualify as a consumer under the VPPA. "[V]isiting the provider's website to view videos "evince[d] no desire to forge ties with, and need not have in any way tied her to, [the provider]" because the plaintiff could "decide to never visit the [the provider's] website ever again—and that decision will have zero consequences, costs, or further obligations." *Id.* (citation omitted). As is the case here, Plaintiff do not allege "that their status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience. They were subscribers to newsletters, not subscribers to audio visual

---

[3] Plaintiffs' Complaint alleges they are subscribers of video tape services or NFL goods or services under 18 U.S.C. § 2710(a)(1). They do not allege that they are renters or purchasers.

materials." *Carter*, 2023 U.S. Dist. LEXIS 71150, at *17. *See also Salazar*, 2023 WL 5016968, at *9-10 ("the Court does not find that Plaintiff's subscription to Defendant's newsletter rendered him a consumer of goods or services from a video tape service provider under the VPPA.").

Merely subscribing to the free NFL e-newsletter is insufficient to qualify Plaintiffs as subscribers within the meaning of the VPPA. Plaintiffs did not create an account or pay to subscribe to Defendants' newsletters, nor did they "evince [a] desire to forge ties with" Defendants when accessing free content on the Team Websites. *Austin-Spearman*, 98 F. Supp. 3d at 669. Plaintiffs are no different than other visitors to the Team Websites as they did not gain access to exclusive content or receive extra benefits through their subscription, and there was no consequence if Plaintiffs ceased to visit the Team Websites. *Carter*, 2023 U.S. Dist. LEXIS 71150, at *18. *See also Salazar*, 2023 WL 5016968, at *10 (finding "links to video content [in newsletter] which is generally accessible on the NBA.com website are insufficient to create a subscribership relationship (or exchange of value) vis-à-vis video services given the lack of allegations regarding exclusive content or enhanced access.").

As such, Plaintiffs have failed to meet their burden that they acted as subscribers when video watching on the Team Websites, and are not consumers under the VPPA.

### III. "Knowingly Disclosure" of Plaintiffs' Personally Identifiable Information Claim.

Because this Court has found Plaintiffs' relationship with Defendants is not one of consumers under the VPPA, it declines to reach Plaintiffs' knowing disclosure of PII claim.

### IV. Plaintiffs' Request to Amend Their Complaint Is Denied.

Finally, Plaintiffs seek to amend their Complaint. "[L]eave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). There is no indication that granting Plaintiffs leave

to amend would be anything but futile: Plaintiffs have failed to allege sufficient facts to support a viable claim under the VPPA.

## CONCLUSION

For the reasons set forth by the Court, the Court **DENIES** Defendants' motion to dismiss, ECF No. 25, pursuant to Fed R. Civ. P. 12(b)(1), and **GRANTS** Defendants' motion under Fed R. Civ. P. 12(b)(6). Plaintiffs are **DENIED** leave to amend their Complaint.

**SO ORDERED.**

**Dated: September 27, 2023**
   New York, New York

_____
   **ANDREW L. CARTER, JR.**
   **United States District Judge**